# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

JOHN LICHTERMAN, et al.                                                              PLAINTIFFS

v.                                                        CAUSE NO.: 1:07-CV-256-SAA-JAD

PICKWICK PINES MARINA, INC. et al.                                          DEFENDANTS

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART PRELIMINARY INJUNCTION

This cause came on for consideration on Plaintiffs', John Lichterman, Vince Marascuilo, and Marsha Marascuilo, Emergency Petition for Preliminary Injunction. The Court, having reviewed submitted briefs, the transcript of the hearing, statutory and case law is of the following opinion:

### Background

In 2000, the Tennessee Valley Authority (hereinafter "TVA") leased approximately 31 acres of land to Tishomingo Development Foundation (hereinafter "TCDF") wherein TCDF proposed the construction of a convention center hotel, a marina, cabin sites, and covered boat slips. In December of 2000, TVA issued its Final Environmental Assessment (hereinafter "2000 FEA") which conditioned its Finding of No Significant Impact (hereinafter "FONSI") upon the following restrictive conditions:

> FINDING OF NO SIGNIFICANT IMPACT
> This FONSI is contingent upon successful completion of the commitments contained in Section 6.0 of the attached EA.
> ENVIRONMENTAL CONSEQUENCES
> In order to reduce…potential visual impacts to a level of insignificance, various commitments would be included as conditions in the easement (see Section 6.0). The adverse impacts of clearing and earthwork would be substantially reduced by careful site design that protects existing tree cover on steep shoreline slopes, roadside areas, and other sensitive locations. Retained and enhanced vegetative buffers around the site would minimize the impacts seen from the lake and the road…Overall, visual impacts of

1

development would be insignificant, provided the mitigation commitments for visual resources in Section 6.0 are incorporated.
6.0 COMMITMENTS
The following conditions and commitments will be incorporated as conditions in the easement agreement between TVA and Tishomingo County Development Foundation in order to reduce the potential for adverse environmental effects.
1 …
2 …
3 The applicant shall be required, through deed restrictions, to maintain a 50-foot undisturbed buffer to be managed as a shoreline management zone.
4 Undisturbed forested buffers at least 50-feet wide shall be maintained and enhanced around the site with 100-foot minimum width along the cove at the north end. Minimum openings are acceptable for water access on the south end.
...

In 2001, TVA issued an Environmental Impact Statement (hereinafter "2001 FEIS") which states, in part: "Under the proposed action, environmental safeguards include maintenance of shoreline and woodland buffers around the perimeter of the property…" Thereafter, TVA issued TCDF an easement with all of the covenants mentioned *supra*. TCDF, in turn, leased the property to Pickwick Pines Marina (hereinafter "PPM").

Subsequently, in 2006, TVA issued its 2006 "Finding of No Significant Impact and Final Supplemental Assessment" (hereinafter collectively "2006 SEA") which also mentioned the incorporated commitments stated in 2000 FEA. Specifically, the documents mentioned that an undisturbed buffer around the property was to remain intact. The 2000 FEA states, in part:

CHAPTER 6
6.0 PERMIT CONDITIONS AND MITIGATION MEASURES
Special Conditions (p. 35)
…
5. The applicant would be required, through deed restrictions, to maintain a 50-foot undisturbed buffer to be managed as a shoreline management zone. Undisturbed forested buffers at least 50 feet wide would be maintained and enhanced around the site with 100-foot minimum width along the cove at the north end. Minimum openings are acceptable for water access on the south end.

On or about July 10, 2007, Plaintiffs, John Lichterman, Vince Marascuilo, and Marsha Marascuilo (hereinafter "Plaintiffs,") who consist of homeowners across the cove of the northern

border of said property, observed the cutting of trees in what they believed was one or both of the buffer zones. The homeowners and TVA exchanged numerous emails and letters stating their concerns and positions about the matter. On July 26, 2007, TVA agreed to cease work and tree removal in the purported buffer zones.

In June of 2007, PPM submitted detailed site development plans for approval to TVA. TVA Land Use Specialist Stephen E. Williams was responsible for the approval of the plans. On July 2, Mr. Williams sent an email to Kenneth Parr, a senior specialist on TVA's NEPA Services staff, asking him to review the project to ensure compliance with the 2006 SEA. Thereafter, Mr. Williams emailed Rebecca Tolene discussing his concerns of the language of "undisturbed buffer." The email referenced the 50-foot buffer and stated that the proposed modification would not affect the 100-foot buffer. Then, Mr. Williams asked Jon C. Riley, a landscape architect in charge of Visual Assessments on TVA's Environmental Stewardship Staff, to review the plans. On July 25, 2007, Mr. Riley, who has a Bachelor of Science degree in Landscape Architecture from Mississippi State University, sent an email to Mr. Williams stating that he felt the modification was not a problem and not in contradiction of the 2006 SEA. The TVA staff involved in the project held a conference call to discuss the approach for TVA's NEPA review of the proposed modification and determined the matter should be formally reviewed under section 5.5 of TVA's NEPA regulations. Thereafter, Mr. Parr determined that the use of riprap on the shoreline would provide an equal or greater level of erosion control and aquatic ecological resource protection as an "undisturbed" buffer. As to visual concerns, Mr. Riley concluded that once construction of the marina was complete, the project's visual impact would not be substantially changed by the cart path on the edge of the bank with the buffer extending inland. Dr. Charles P. Nicholson, a NEPA program manager with a Bachelor of Science Degree in

Wildlife Fisheries Science, Master of Science degree in Wildlife Management and a Ph.D. in Ecology, and Evolutionary Biology, reviewed the project and noted that a 50-foot undisturbed buffer provides a very limited benefit to wildlife. In other words, he stated that the difference between the "undisturbed" buffer and the managed buffer was minimal.

On August 15, 2007, Jon M. Loney, Senior Manager of TVA's NEPA Policy Staff, reviewed the project and the findings of the experts and concluded the proposed changes would have a negligible effect on the anticipated environmental impacts concerning the development. Thus, he concluded that the proposed changes would not alter TVA's previous FONSI on the project. The August 15 memorandum modified the 50-foot buffer zone to include the cart path running along the edge of the east bank.

## Plaintiffs' Preliminary Injunction

Consequently, Plaintiffs filed suit on November 1, 2007 alleging that TVA violated the National Environmental Policy Act (hereinafter "NEPA") and that each party breached assessment commitments, easement covenants, and lease conditions. The Plaintiffs seek restoration, injunctive relief, mandamus, and monetary damages for, but not limited to, diminution in property value. On November 19, 2007, Plaintiffs moved for an emergency preliminary injunction to prevent the Defendants from further razing in the buffer zones in question. The Court held a hearing on November 30, 2007 and heard arguments as to the preliminary injunction.

In order to prevail on their motion of preliminary injunction, Plaintiffs must establish that (1) there is a substantial likelihood that they will prevail on the merits, and that (2) there is a substantial threat that they will suffer irreparable injury if the preliminary injunction is denied, and that (3) the threatened injury to the plaintiff outweighs the threatened injury to the party to

be enjoined, and that (4) granting the preliminary injunction will not disserve the public interest. Sierra Club v. FDIC, 992 F.2d 545, 551 (5th Cir.1993); City of Ridgeland v. Nat'l Park Serv., 253 F.Supp. 888, 894(S.D. Miss. 2002). The Plaintiffs carry the burden to prove each of the four elements separately. Plains Cotton Co-op Ass'n of Lubbock, Tex. v. Goodpasture Computer Serv., Inc., 807 F.2d 1256, 1261 (5th Cir. 1987).

Since the Plaintiffs pray for the ceasing of activity in both buffer zones, the Court opines that the 50-foot buffer zone and the 100-foot buffer zone should be evaluated separately in considering the preliminary injunction. Therefore, the Court will ensure that the plaintiff has proved each factor as to each of the buffer zones.

**Standing**

Defendant, Pickwick Pines, argues that the Plaintiffs lack standing to bring this action. The Supreme Court of the United States, in Lujan v. Defenders of Wildlife, held that a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); Sierra Club v. Cedar Point Oil Co., Inc., 73 F.3d 546, 556 (5th Cir. 1996). Moreover, the Supreme Court in Friends of the Earth, Inc. v. Laidlaw Environmental held that for purposes of Article III standing, there must be a showing of injury to the plaintiff not just to the environment. Friends of the Earth, Inc. v. Laidlaw Envtl, 528 U.S. 167, 181, 120 S.Ct. 693, L.Ed.2d 610 (2000). The Court further held that environmental plaintiffs adequately allege injury in fact when they "aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be

lessened by the challenged activity" Laidlaw, 528 U.S. at 183. (quoting Sierra Club v. Morton, 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)).  Plaintiffs must allege "a personal stake in the outcome" as opposed to a generalized grievance shared by the public at large. Warth v. Seldin, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

A plaintiff must demonstrate standing for each form of relief sought.  Laidlaw, 528 U.S. at 185.  The Plaintiff's burden to establish standing must be proved by establishing that, "if unchecked by the litigation," the Defendant's wrongful conduct will likely occur or continue and the injury is impending.  Id.

In the case sub judice, Plaintiffs have sufficiently established standing under Article III for purposes of the preliminary injunction.  The Plaintiffs share a cove with the Defendants and have alleged injury, both economically and environmentally. Therefore, Plaintiffs have established a geographical nexus and a concrete and particularized injury in fact that is actual and imminent.  Additionally, the Plaintiffs injury is traceable to the challenged action of the defendants (the cutting of trees in the cove).  Further, a favorable decision would redress the injury and prevent any further cutting or grading.  Moreover, Plaintiffs have adequately alleged a personal stake in the outcome. In other words, the Plaintiffs' injury is not a general grievance shared by the public at large.  Their injury is specific to them as landowners across the cove.  For the foregoing reasons, the Plaintiffs have established the requisite factors for standing for the purposes of the preliminary injunction.  See Hawthorn Environ. Pres. Ass'n v. Coleman, 417 F.Supp. 1091 (N.D. Ga. 1976), aff'd, 551 F.2d 1055 (5th Cir. 1977)(holding that landowners of property adjacent to highway project established standing); Goos v. Interstate Commerce Comm'n., 911 F.2d 1283 (8th Cir. 1990)(holding that a landowner with property adjacent and

adjoining the project in question had standing); See also Sierra Club v. Cedar Point, 73 F.3d at 556-58 (holding that visitors and users of a bay established standing).

## The National Environmental Policy Act

The National Environmental Policy Act of 1969, 42 U.S.C. § 4321, is designed to ensure federal agencies carry out projects affecting the environment in an environmentally conscious manner. Sabine River Auth. v. U.S. Dept. of Interior, 951 F.2d 669, 675 (5th Cir. 1992). The purpose of these requirements is to ensure that the Federal agencies have properly and fully evaluated all environmental concerns. Sabine, 951 F.2d at 675.

NEPA is strictly a procedural statute, and is not intended to force any substantive directives upon an agency. Id. at 676. Specifically, the Court's role is to ensure that the agency's process at arriving at a decision was thorough and that the agency took a "hard look" at the environmental consequences of all aspects of the projects. Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 348, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989). In sum, the Court must evaluate whether the agency "has adequately considered and disclosed the environmental impact of its action and that its decision is not arbitrary and capricious." Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 97-98, 103 S.Ct. 2246, 76 L.Ed.2d. 437 (1983). Further, the Court will reverse an agency's decision as arbitrary and capricious under the "hard look" doctrine if (1) the decision does not rely on the factors that Congress intended the agency to consider, (2) the agency failed entirely to consider an important aspect of the problem, (3) the agency offers an explanation which runs counter to the evidence; or (4) the decision is so implausible that it cannot be the result of differing viewpoints or the result of agency expertise. Sierra Club v. U.S. Army Corps of Eng'rs, 295 F.3d 1209, 1216 (11th Cir. 2002).

### Plaintiffs' NEPA Claims

Plaintiffs claim that TVA has violated NEPA by the cutting of the trees in both buffer zones in violation of the 2000 FEA, the 2006 SEA, the lease, and the easements. Moreover, the Plaintiffs claim that TVA never contemplated the cutting of trees in the 100-foot buffer zone. Specifically, Plaintiffs claim that TVA failed to give the requisite "hard look" at environmental concerns before cutting trees for the cart path in the buffer zones. The Court now reviews the evidence in order to ascertain whether a violation of NEPA occurred to warrant granting of the preliminary injunction.

### The 50-Foot Buffer Zone

TVA acknowledged an ambiguity in the project language at the hearing. The Court agrees that an obvious ambiguity in the project exists. The 2000 FEA and 2006 SEA both specifically state that a 50-foot buffer should remain "undisturbed." The Court is of the opinion that TVA initially intended for the buffer zone to remain "undisturbed." However, TVA conducted a review of the new issue (i.e. 50-foot inland managed buffer versus 50-foot undisturbed buffer) between July and August 2007, and memorialized the findings in the August 15, 2007 memorandum. This Court can consider an agency memorandum that reviews a new issue that was not contemplated in the FONSI. Highway J Citizens Group v. Mineta, 349 F.3d 938, 958 (7th Cir. 2003).

After the hearing on November 30, 2007, the Court ordered TVA to produce an affidavit outlining the procedures that were used to determine the findings in the August 15, 2007 memorandum. Plaintiffs submitted the Declaration of Jon M. Loney which explains the rigorous process involving many experts. Additionally, Susan Tidwell, a TVA employee involved in the NEPA process, confirmed that TVA conducted a NEPA review in mid July 2007 to decide

whether or not the "undisturbed" modification would have a significant environmental effect. She further stated TVA decided it would still meet the original objectives of the commitments. In addition, Helen Rucker submitted a sworn affidavit stating a similar position. After a thorough review of the inland buffer, TVA concluded that an inland buffer would have no greater environmental impact than an undisturbed buffer.

The Court has determined that based on the affidavits mentioned above, the experts analyses cited, and the emails aforementioned, TVA conducted an adequate review in finding that the cart path and 50-foot inland buffer had no greater impact on the environment than the undisturbed buffer.

As previously mentioned, the Plaintiffs must prove the four factors in order for a preliminary injunction to be issued. Sierra Club v. FDIC, 992 F.2d at 551. As to the 50-foot buffer, Plaintiffs have failed to prove the first element, that there is a substantial likelihood that they will prevail upon the merits. This Court is of the opinion that TVA took a "hard look" at the environmental concerns of the cart path, and its decision did not rise to the level of arbitrary and capricious. TVA has submitted numerous documents, discussed *supra*, which prove an adequate investigation was conducted. Therefore, the Court does not find it necessary to delve into the other elements of a preliminary injunction. In sum, Plaintiffs have failed to prove the first element of the preliminary injunction standard, and therefore, the preliminary injunction is denied as to the 50-foot buffer.

**The 100-foot Buffer**

The majority of documents TVA submitted contain the language that an undisturbed forested buffer is to be "enhanced around the site with 100-foot minimum width along the cove at the north end." Contrary to the specific language of the 2000 FEA, 2006 SEA, the easement,

and the lease, plaintiffs contend trees have been cut and vegetation has been removed in the 100-foot buffer.  Further, the exhibits indicate that the cart path curves into the cove of the 100-foot buffer.  The August 15th memorandum and VMP state that the 100-foot buffer zone "reaches from the northwestern corner of the property toward the reservoir, along the cove at the north end of the property."   Additionally, the VMP's diagram shows a wooded area on the northeastern point.  Moreover, Mr. Williams' email to Rebecca Tolene states the modification to the 50 foot buffer would not affect the 100-foot buffer.  The Court is not aware of any evidence that purports that any investigation, review, survey, or analysis was conducted as to the 100-foot buffer or whether any environmental impact exists as to the cutting of trees on the northern bank.

TVA did not take the requisite "hard look" at the environmental consequences and/or concerns as to the cutting of trees in the 100-foot buffer.  The Court is not aware of any evidence in the record that cutting of trees on the northeast corner was contemplated or evaluated.  See Citizen Advocates for Responsible Expansion (I-CARE) v. Dole, 770 F.2d 423, 437 (5th Cir. 1985)(remanding to a agency a part of a highway project that was never contemplated ) Therefore, the Plaintiffs have established a likelihood that they will prevail upon the merits of the case and have satisfied the first element of the preliminary injunction factors.

The second factor in the analysis is that plaintiff must prove that there is a substantial threat that they will suffer irreparable injury if the preliminary injunction is denied.  Plaintiffs contend that if the preliminary injunction is denied, they will suffer irreparable injury.  Particularly, Plaintiffs allege that restoration of mature trees will be impossible if trees continue to be cut.  While the Defendants contend that no further trees will be cut, grading and placing riprap along the bank will cause permanent harm to the Plaintiffs.  The Court agrees that further grading and leveling will likely constitute irreparable harm to the Plaintiffs.

The third factor is that the threatened injury to the plaintiff outweighs the threatened injury to the party to be enjoined. Similar to the analysis of the second factor, any additional grading or bulldozing of the bank will likely constitute damage that is irreparable to the Plaintiffs, and therefore, irreparable harm would outweigh any insignificant amount of monetary to the Defendants. The 100-foot buffer is a small area compared to the Defendants' entire project, but to the Plaintiffs, the 100-foot buffer is the important piece which abuts their property. Therefore, the threatened injury to the Plaintiffs outweighs the threatened injury to the Defendants.

The fourth factor is that granting the preliminary injunction will not disserve the public interest. Certainly in this case, the granting of the preliminary injunction will not disserve the public interest. Public interest would be better served if TVA performed a thorough investigation of the environmental impact upon the 100-foot buffer.

In sum, Plaintiffs have proved the requisite factors for a preliminary injunction with regards to the 100-foot buffer. Accordingly, the Court grants the preliminary injunction as to the 100-foot buffer until such time as the Court can evaluate the findings, assessments, and investigations of TVA. Therefore, the preliminary injunction is granted until further order of this court.

**Conclusion**

The Plaintiffs have proved the requisite factors as applied to standing for purposes of the preliminary injunction. Further, the Court is of the opinion that the Plaintiffs have failed to prove the factors which would warrant them a preliminary injunction as to the 50-foot buffer. Conversely, the Court is of the opinion that TVA failed to take a "hard look" at the environmental consequences of the 100-foot buffer.

Ambiguities and inconsistencies still exist in the 2001 FONSI and the 2006 FONSI. In order to have an adequate understanding of the project and environmental impacts of cutting of trees around the north cove, this Court must grant the preliminary injunction until TVA investigates and evaluates the 100-foot buffer.

Therefore, we remand to TVA to evaluate and investigate the 100-foot buffer consistent with NEPA regulations. Further, we remand to TVA to address the apparent ambiguities in the location of the 100-foot buffer and to define whether or not the intended 100-foot buffer extends eastward to the property's eastern shoreline, i.e. across the "entire" north end of the property.

For purposes of this Preliminary Injunction, no work is to be performed starting at the northeast corner of the property and stretching west/northwest to the western boundary of the leased property, then South 100 feet, and inland 100 feet across the entire north end of the property, until further order of this court. Work may resume in areas not included in the above coordinates.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**JOHN LICHTERMAN, et al.**  PLAINTIFFS

**v.**  **CAUSE NO.: 1:07-CV-256-SAA-JAD**

**PICKWICK PINES MARINA, INC. et al.**  DEFENDANTS

## ORDER GRANTING IN PART AND DENYING IN PART PRELIMINARY INJUNCTION

This cause came on for consideration on Plaintiffs', John Lichterman, Vince Marascuilo, and Marsha Marascuilo, Emergency Petition for Preliminary Injunction. The Court, having reviewed submitted briefs, the transcript of the hearing, statutory and case law is of the following opinion:

The Court denies the preliminary injunction with regards to the 50-foot buffer zone. The Court grants the preliminary injunction with regards to the 100-foot buffer zone until further order of this Court.

Moreover, the Court remands to TVA to evaluate and investigate the 100-foot buffer consistent with NEPA regulations. Further, the Court remands to TVA to address the apparent ambiguities in the location of the 100-foot buffer and to define whether or not the intended 100-foot buffer extends eastward to the property's eastern shoreline, i.e. across the "entire" north end of the property.

For purposes of this Preliminary Injunction, no work is to be performed starting at the northeast corner of the property and stretching west/northwest to the western boundary of the leased property, then South 100 feet, and inland 100 feet across the entire north end of the property, until further order of this court. Work may resume in areas not included in the above coordinates.

**SO ORDERED**, this the 6th day of December, 2007, at 3:30 P.M. C.S.T.

/s/ **Sharion Aycock**

**UNITED STATES DISTRICT JUDGE**