IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JOHN LICHTERMAN, VINCE
MARASCUILO and MARSHA
MARASCUILO                                                                                    PLAINTIFFS

V.                                                          CIVIL ACTION NO.: 1:07CV256-SA-JAD

PICKWICK PINES MARINA, INC.,
TISHOMINGO COUNTY DEVELOPMENT
FOUNDATION, and TENNEESSEE VALLEY
AUTHORITY                                                                                     DEFENDANTS

MEMORANDUM OPINION

Presently before the Court is Tennessee Valley Authority's Motion for Judgment on the Pleadings or for Summary Judgment on Plaintiffs' claims [124]. The Court finds as follows:

*Factual and Procedural Background*

In 2000, Tennessee Valley Authority (TVA) leased approximately 31 acres of land to Tishomingo County Development Foundation (TCDF). TCDF proposed the construction of a convention center hotel, a marina, cabin sites, and covered boat slips. Pursuant to the National Environmental Policy Act of 1969 (NEPA), § 2 et seq., 42 U.S.C. §§ 4321 et seq., TVA issued a series of findings as to the environmental impact of TCDF's proposal. In December of 2000, TVA issued a Final Environmental Assessment (2000 EA) and a Finding of No Significant Impact (2000 FONSI) that contained several restrictive conditions. Those conditions were memorialized in an agreement between TVA and TCDF and included:

•       a requirement that TCDF, through deed restrictions, maintain a 50-foot undisturbed buffer to be managed as a shoreline management zone;

•       a requirement that undisturbed forested buffers at least 50-feet wide be maintained and enhanced around the site with 100-foot minimum width along the cove at the north end.

In 2001, TVA issued an Environmental Impact Statement (2001 FEIS) that stated in relevant part, "Under the proposed action, environmental safeguards include maintenance of a shoreline and woodland buffers around the perimeter of the property . . . ." In 2005, TCDF leased the area to Pickwick Pines for the construction and operation of a marina. Pickwick Pines applied to TVA for a permit to construct and operate the marina on the property. Building on the 2000 EA, TVA issued a Final Environmental Assessment (2006 EA) in 2006 that evaluated the environmental effects of Pickwick Pines's proposal. TVA also issued a second FONSI (2006 FONSI) and issued Pickwick Pines a section 26a permit to build and operate the marina.

The 2006 EA included several conditions to reduce potential adverse environmental effects, including the following condition:

> The applicant would be required, through deed restrictions, to maintain a 50-foot undisturbed buffer to be managed as a shoreline management zone. Undisturbed forested buffers at least 50 feet wide would be maintained and enhanced around the site with 100-foot minimum width along the cove at the north end. Minimum openings are acceptable for water access on the south end.

The section 26a permit issued to Pickwick Pines also contained a special condition regarding a 50-foot undisturbed buffer. The language of the condition was identical to the one contained in the 2006 EA. The section 26a permit also contained an attachment which described a paved trail to be constructed for golf cart and foot traffic. The trail is described in the permit:

> A twelve (12) foot wide paved surface shall be provided. The lake side of the trail shall have four (4) foot crushed stone shoulder leading into a rip rap section that extends below water level. The rip rap protection will be approximately 1800 feet along the shore. The protection shall extend to an approximate elevation of 410. The shore side of the trail shall have retaining walls and erosion features as necessary.

In June 2007, Pickwick Pines submitted detailed site development plans for approval to TVA. TVA Representative Stephen Williams began review of the plans in early July. Williams

concluded that the condition requiring maintenance of a "50-foot undisturbed buffer" as a shoreline management zone was inconsistent with the condition requiring "maintenance and enhancement" of a woodland buffer at least 50 feet wide. Williams also concluded that it would be impossible to have an "undisturbed" buffer around a commercial marina project. He proposed modifying the special condition language to require a managed buffer area.

In July 2007, Plaintiffs observed the cutting of trees in what they believed were the buffer zones. Plaintiffs contacted TVA with their concerns, and TVA agreed to cease work and tree removal in the buffer zones. TVA decided to conduct a NEPA review of whether modifying the buffer language would have significant environmental impacts. TVA memorialized its findings and review of the project in a memo on August 15, 2007, which recognized that the "broad language of the environmental commitments" did not reflect the necessities of the development of the marina. In effect, TVA acknowledged the plans to construct a cart path conflicted with the commitment to maintain a 50-foot undisturbed buffer. The August 15 Memorandum also discussed the vegetation that was already removed from the shoreline buffers, stating that such removal was anticipated in the 2000 EA as necessary to obtain access to the shoreline. The August 15 Memorandum concluded that the proposed changes (permitting a managed buffer rather than an undisturbed buffer) would not alter TVA's previous EAs and FONSIs and would have negligible environmental impact, and accordingly, modified the 50-foot buffer zone to include the cart path running along the edge of the east bank.

Once Plaintiffs were informed that TVA had approved modification of the buffer language, they filed suit on November 1, 2007, alleging that TVA violated NEPA, and that each party breached assessment commitments, easement covenants, and lease conditions. Plaintiffs petitioned

3

the Court to enjoin TVA from violating the conditions contained in the 2000 and 2006 EAs. This Court denied the preliminary injunction as to the 50-foot buffer, holding that TVA's review of modification of the buffer language was not arbitrary and capricious as TVA took a hard look. However, the Court granted the preliminary injunction as to the 100-foot buffer, holding that there was no evidence that any investigation, review, survey, or analysis was conducted as to the 100-foot buffer or the removal of trees on the northern bank. The Court remanded to TVA for further investigation and evaluation of the 100-foot buffer. Plaintiffs appealed the denial of the injunction as to the 50-foot buffer, and the remand to TVA as to the 100-foot buffer. The Fifth Circuit affirmed this Court's denial of a preliminary injunction as to the 50-foot buffer and affirmed the grant of a preliminary injunction as to the 100-foot buffer and remand to TVA for further evaluation. Lichterman, et al. v. Pickwick Pines, Marina, et al., No. 07-61014, 2009 WL 221280 (5th Cir. Jan. 30, 2009).

On March 16, 2009, this Court issued a ruling on Defendants' separate motions to dismiss that were pending at the time of appeal. The Court granted TCDF's and PPM's motions to dismiss with respect to Plaintiffs' NEPA claim as neither TCDF nor PPM is a federal agency, but denied TCDF's and PPM's motions with respect to Plaintiffs' breach of contract claims. The Court converted TVA's motion to dismiss into a motion for summary judgment and denied the motion as premature as the parties had not yet participated in discovery.

During the pendency of the district and appellate proceedings, construction of the marina has ceased. TCDF issued PPM a notice of default and termination, declaring the lease terminated effective November 30, 2008. On January 28, 2009, TVA gave TCDF written notice of its intent to terminate the commercial recreation easement based on TCDF's default in the performance of

4

certain obligations under the easement. TVA allowed TCDF thirty days to cure those defaults; however, TCDF failed to do so. On March 2, 2009, TVA notified TCDF that the easement was terminated effective April 1, 2009. TVA informed PPM by letter dated March 11, 2009, that the termination of the lease and easement "extinguishes all rights of use, access, and claims to structures and facilities" formerly authorized by PPM's section 26a permit.

TVA moved for judgment on the pleadings or, in the alternative, summary judgment. TVA argues that Plaintiffs' claims have been rendered moot by the termination of easement from TVA to TCDF, the lease from TCDF to PPM, and the legal extinguishment of PPM's permit under section 26a of the TVA Act; that Plaintiffs' have no private cause of action under NEPA; that the unambiguous language of the easement does not cover Plaintiffs as third-party beneficiaries; and, that without a viable underlying legal claim, Plaintiffs' request for restoration is not-actionable.

*Standard of Review*

The standard for deciding a motion for judgment on the pleadings is the same as a Rule 12(b)(6) motion to dismiss. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). In order to avoid dismissal pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S. Ct. 1955. The court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litig., 495 F.3d at 205.

*Discussion*

I.   National Environmental Policy Act

NEPA is a procedural statute which demands that federal agencies be "environmentally conscious" of the potential impacts certain projects may have on ecological surroundings. Sabine River Auth. v. U.S. Dep't Of Interior, 951 F.2d 669, 676 (5th Cir. 1992). NEPA "does not command the agency to favor an environmentally preferable course of action, only that it make its decision to proceed with the action after taking a 'hard look at environmental consequences.'" Id. (citing Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 109 S. Ct. 1835, 104 L. Ed. 2d 351 (1989)). In fact, "NEPA does not prohibit the undertaking of federal projects patently destructive of the environment; it simply mandates that the agency gather, study, and disseminate the information concerning the projects environmental consequences." Id. Thus, NEPA "prohibits uninformed – rather than unwise – agency action." Id.

NEPA dictates no particular substantive result, and thus agency decisions are reviewable under the Administrative Procedures Act (APA), *only on procedural grounds*. 5 U.S.C. § 706(2)(A); National Environmental Policy Act of 1969,§ 2 *et seq.*, 42 U.S.C. § 4321 *et seq.* Under the APA, injured parties may challenge an agency's environmental review of a "major federal action" as arbitrary and capricious and request further NEPA processes be taken. Spiller v. White, 352 F.3d 235, 240 (5th Cir. 2003). Importantly, Plaintiffs do not contend that TVA's 2000 FEA and 2006 FSEA are inadequate or that TVA failed to adhere to NEPA's procedural requirements. In fact, Plaintiffs concede that the reports are satisfactory. Rather, Plaintiffs seek enforcement of the specific conditions contained in the 2000 and 2006 EAs.

In Noe v. Metropolitan Atlanta Rapid Transit Authority, the Fifth Circuit affirmed the district court's holding that NEPA requires only the filing of an environmental impact statement, not

compliance therewith. 644 F.2d 434, 435 (5th Cir. 1981). Specifically, the Fifth Circuit held that a violation of NEPA "does not create an implied private right of action on behalf of injured citizens." Id. ("The Plaintiff has not pointed to any section of [NEPA] which would require the defendants to abide by the particulars of the environmental impact statement. We refuse to imply both a duty and a cause of action."). The Noe Court further observed that even "the legislative history [of NEPA] indicates a specific intent to deny relief to private individuals who may be injured when an environmental impact statement is not followed." Id. at 438.

Accordingly, Plaintiffs have no legal right to sue for the enforcement of specific conditions contained in the 2000 and 2006 EAs. Plaintiffs may only seek judicial review of TVA's action under the APA on procedural grounds.

Plaintiffs contend that TVA violated NEPA by failing to require TCDF and PPM to adhere to the environmental commitments contained in the 2000 and 2006 EAs which were incorporated in TCDF's easement and PPM's lease and section 26a permit. Specifically, Plaintiffs allege these conditions "were required in order for the *project at issue* not to have a significant adverse impact upon the environment" and were required to be followed by TVA, TCDF, and PPM "in going forward with *this project*." TVA maintains that the environmental commitments which Plaintiffs allege have been violated were included in the 2001 and 2006 FONSIs to ensure that the construction of a marina by PPM and TCDF did not have significant adverse impacts on the environment. According to TVA, Plaintiffs' NEPA claims regarding the environmental commitments predicated on the marina plans are now moot as the site preparation work for the marina was completed in early 2008, the marina development proposed by TCDF and PPM is no longer being constructed, and TCDF's easement and PPM's section 26a permit and lease are no

7

longer in force.  TVA argues that granting Plaintiffs' request to enjoin Defendants from violating in the future any of the conditions set forth in the 2000 and 2006 EAs would be a futile act as the actions studied in those NEPA reviews were abandoned when the easement and lease were termination.

To qualify a case for federal adjudication, a case or controversy must exist at all stages of the litigation, not just at the time the suit was filed.  Harris v. City of Houston, 151 F.3d 186, 189 (5th Cir. 1998).  A claim under NEPA does not present a live controversy when the complained of action has been completed so that no effective relief is available.  See Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Eng'rs, 217 F.3d 393, 398 (5th Cir. 2000) (substantial completion of construction project mooted NEPA claim).

Plaintiffs argue that their claim is not moot as meaningful relief is still available. Plaintiffs are seeking restoration of the damage to the property resulting from TVA's deviations from its environmental mitigation measures.  However, as explained above Plaintiffs are not entitled to enforcement of the specific conditions laid out in the 2000 and 2006 EAs.  At best, Plaintiffs are entitled to more process under the APA.  The Court is of the opinion that even more process under these circumstances does not constitute meaningful relief which could maintain Plaintiffs' claim as a live controversy.  See Vieux Carre Property Owners, Residents & Associates, Inc. v. Brown, 948 F.2d 1436, 1446 (5th Cir. 1991) ("The question is not whether the precise relief sought at the time an application for injunction was filed is still available.  The question is whether there can be any effective relief."). There would be no import to this Court's declaration that TVA's actions were arbitrary and capricious, nor would any true relief result from an order to write a new EA – the project the new EA would assess has been terminated.

8

Plaintiffs further contend that their claims are not moot because this is not a completed project; it is an interrupted project. Plaintiffs argue that TVA is merely waiting for a replacement developer. Nevertheless, even if a replacement developer is obtained, any future development of the site would be considered a new "major federal action" under NEPA; thus, TVA would have to conduct new environmental assessments.

Finally, Plaintiffs argue that even if the Court finds their claims technically are moot, the Court should apply the exception to the mootness doctrine as their claims constitute "issues capable of repetition, yet evading review." See Vieux Carre, 948 F.2d at 1447 ("Although a case may technically be moot, a federal court may nevertheless retain jurisdiction if a continuing controversy exists or if the challenged problem is likely to recur or is otherwise capable of repetition."). There are two prongs to the "capable of repetition, yet evading review" exception that must be simultaneously present, and the plaintiff bears the burden of proving both prongs. Davis v. Fed. Election Comm'n, - - -U.S.- - -, 128 S. Ct. 2759, 2769, 171 L. Ed. 2d 737 (2008). The exception's "capable of repetition" prong "requires that there be some possibility that the challenged conduct will be repeated and affect the plaintiff." Vieux Carre, 948 F.2d at 1447. The exception's "evading review" prong "requires that the type of harm be of limited duration so that it is likely to be moot before litigation is completed." Id. This mootness exception "applies only in exceptional situations." Spencer v. Kemna, 523 U.S. 1, 17, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998).

As to the first prong, Plaintiffs again argue that this is an interrupted, not a completed project, and that TVA is merely waiting for a replacement developer. Thus, according to Plaintiffs, the challenged conduct will be repeated. Plaintiffs contend that the evading review prong is also satisfied in that TVA has demonstrated by its conduct in this case that its strategy is to authorize

9

construction of improvements with no notice to adverse parties and then assert that since the work is done, all objections are moot.

The Court concludes that Plaintiffs have not satisfied either prong. The project about which Plaintiffs complain has been terminated – the easement, the lease, and the section 26a permit all have been terminated. Even if there is an expectation of future development in this area, new development of the site would not be the same project but a new major federal action, necessitating new environmental reviews under NEPA. Any purported NEPA violations in connection with future plans are unripe for review as such plans for the site are speculative. The Court also is not persuaded any future injury to Plaintiffs will evade review. Following the same process as Plaintiffs followed in the present case, Plaintiffs may apply for a preliminary and permanent injunction which would halt construction. Although Plaintiffs' claims in this case were mooted after the project's cessation, actions such as these are not inherently capable of evading review. In future developments of this area, Plaintiffs will have the opportunity, if they deem necessary, to seek injunctive relief to ensure compliance with NEPA *procedural* mandates.

II.     Third Party Beneficiaries

Plaintiffs seek to enforce certain conditions in the terminated easement between TVA and TCDF, alleging that they are "third-party beneficiaries of the easement . . . the restrictions and conditions of which are particularly intended to protect and preserve the value of plaintiffs' real property."

Federal law controls the interpretation of a contract entered pursuant to federal law when the United States is a party. Klamanth Water Users Protective Ass'n v. Patterson, 204 F. 3d 1206, 1210 (9th Cir. 1999). Contract terms are to be given their ordinary meaning, and when the terms of the

contract are clear, the intent of the parties must be ascertained from the contract itself. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1549 (9th Cir. 1989). To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. See Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997). "When a contract is with a government entity, a more stringent test applies: 'Parties that benefit . . . are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary.'" Kremen v. Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003) (citing Klamath, 204 F.3d at 1211). "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." RESTATEMENT (SECOND) OF CONTRACTS § 313(2) cmt. a.

Plaintiffs derive their purported third-party beneficiary status from the easement language which provides for a 100-foot buffer at the north end of the site across the embayment from their property, while specifying a 50-foot buffer around the perimeter of the rest of the site. The easement language does not indicate the purpose of the 100-foot buffer. Nevertheless, the mere inclusion of the 100-foot buffer on the north end of the site does not manifest a clear intent to benefit the landowners.

Even if the 100-foot buffer was included in the easement with Plaintiffs in mind, this is not sufficient to demonstrate TVA and TCDF intended to benefit Plaintiffs. See Smith v. Central Ariz. Water Conserv. Dist., 418 F.3d 1028, 1038 (9th Cir. 2005) (finding that a government contract written with a particular group in mind is not sufficient to demonstrate the contracting parties' intent to benefit that group). Here, because the easement does not contain language evincing a clear intent to benefit the Plaintiffs, the Plaintiffs are not intended third-party beneficiaries with enforceable

rights.

*Conclusion*

For the reasons set forth above, TVA's Motion for Judgment on the Pleadings [124] is GRANTED. Plaintiffs' claims are rendered moot by the termination of easement from TVA to TCDF, the lease from TCDF to PPM, and the legal extinguishment of PPM's permit under section 26a of the TVA Act. Plaintiffs' claims also do not fall under the exception to the mootness doctrine. Further, Plaintiffs have no private cause of action under NEPA, and the unambiguous language of the easement does not make Plaintiffs third-party beneficiaries.

A separate order in accordance with this opinion shall issue this day.

SO ORDERED, this the 22nd day of February, 2010.

**/s/ Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**